**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ENES URLU,<br><br>Petitioner,<br><br>v.<br><br>DAVID J. VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement, *et al.*,<br><br>Respondents. | ) | Case No. 3:26-cv-3071<br><br>Judge J. Philip Calabrese<br><br>Magistrate Judge<br>Carmen E. Henderson |

**OPINION AND ORDER**

Petitioner Enes Urlu, a citizen and national of Turkey of Kurdish ethnicity who illegally entered the United States in 2024, has been held in immigration custody since November 17, 2026 following his arrest. He petitions for a writ of habeas corpus, complaining that he has been held without a bond hearing and seeks his release pending adjudication of his asylum claim. For the following reasons, the Court **DISMISSES** the petition **WITHOUT PREJUDICE**.

## STATEMENT OF FACTS

According to the petition, Mr. Urlu entered the United States illegally on March 31, 2024. (ECF No. 1, PageID #8.) He did so seeking protection from the persecution and torture he experienced as a Kurd living in Turkey. (*Id.*; *id.*, PageID #7.) When he arrived in the United States, Mr. Urlu sought asylum, and the immigration authorities released him on his own recognizance. (*Id.*, ¶ 3, PageID #2;

*id.*, PageID #8; ECF No. 1-8.) His asylum proceedings remain pending. (ECF No. 1, PageID #8.)

On November 5, 2026, Mr. Urlu began residing with his brother in Sunbury, Ohio. (*Id.*, PageID #9.) His brother has also applied for asylum in the United States. (*Id.*, ¶ 4, PageID #2; *id.*, PageID #9.) A short time later, the two men had a disagreement that resulted in Mr. Urlu's brother calling the police, who arrested Mr. Urlu. (*Id.*, ¶ 6, PageID #2–3, *id.*, PageID #9–10.) No charges appear to have resulted from this incident (*id.*, ¶ 6, PageID #2–3; *id.*, PageID #10.) Nonetheless, Immigration and Customs Enforcement took Mr. Urlu into custody on November 17, 2026. (*Id.*, PageID #10.) He is currently detained in ICE custody.

## STATEMENT OF THE CASE

On November 24, 2026, Mr. Urlu petitioned through counsel for a writ of habeas corpus 28 U.S.C. § 2241. (ECF No. 1.) He alleges that he has not received an individualized bond determination and seeks his immediate release or, alternatively, a bond hearing. (*Id.*, PageID #10.) He claims that his detention violates the Fifth Amendment's Due Process Clause, the Immigration and Nationality Act, and the Administrative Procedure Act.

## ANALYSIS

Under 28 U.S.C. § 2243, a court shall forthwith issue a writ or order the respondent to show cause why a writ should not issue, "unless it appears from the application that the applicant or person detained is not entitled" to a writ of habeas corpus. This statute requires an initial screening of a petition. *See Alexander v.*

*Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011). At this stage of the proceedings, a court accepts as true the allegations in the petition and construes them in favor of the petitioner. *Id.* "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition." Rule 4 of the Rules Governing Section 2254 Cases (applicable to petitions under Section 2241 through Rule 1(b)).

## I. Prudential Exhaustion

"When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the [habeas] petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (citations omitted). In *Leonardo*, the petitioner pursued habeas review of the Immigration Court's adverse bond determination before he appealed to the Board of Immigration Appeals. *Id.* The Ninth Circuit determined that filing a habeas petition in federal district court was improper because the petitioner "should have exhausted administrative remedies by appealing to the BIA before asking the federal district court to review the IJ's decision." *Id.* (citing *Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 819 (9th Cir. 2003)).

The Sixth Circuit has endorsed this procedure for challenging bond determinations, albeit in a short, unpublished order. *See Rabi v. Sessions*, No. 19-3249, 2018 U.S. App. LEXIS 19661, at *1–2 (6th Cir. July 16, 2018) (citing *Leonardo*, 646 F.3d at 1160); *see also Hernandez Torrealba*, 2025 WL 2444114, at *8 (applying the Ninth Circuit's test for prudential exhaustion). Previously, the Court has done

so as well. *See Tecum Pastor v. Director of Detroit Field Off., U.S. Immigr. & Customs Enf't*, 814 F. Supp. 3d 875, 881 (N.D. Ohio 2025); *Monroy Villalta v. Greene*, 794 F. Supp. 3d 528, 530 (N.D. Ohio 2025); *Laguna Espinoza v. Director of Detroit Field Off., U.S. Immigr. & Customs Enf't*, No. 4:25-cv-02107, 2025 WL 2878173, at *2 (N.D. Ohio Oct. 9, 2025); *Ba*, 2025 WL 2977712, at *2.

In this case, Mr. Urlu has proceedings in Immigration Court available to him and an appeal to the Board of Immigration Appeals to press his statutory claims. As in *Leonardo*, 646 F.3d at 1160, prudential principles of exhaustion counsel that Petitioner pursue his administrative remedies to a final judgment from the Board of Immigration Appeals before seeking a writ of habeas corpus. In his petition, Mr. Urlu alleges violations of the Immigration and Nationality Act. Even his Fifth Amendment claim invites review of the process due under the statute and its associated procedures. In other words, any determination regarding detention here turns on interpretation and application of the governing removal regime.

In the first instance, such review should proceed before the Immigration Court and Board of Immigration Appeals to "apply its experience and expertise without judicial interference." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (abrogated on other grounds); *see also Rojas-Garcia*, 39 F.3d at 819 (acknowledging that a "petitioner must exhaust administrative remedies before raising the constitutional claims in a habeas petition when those claims are reviewable by the BIA on appeal"); *Monroy Villalta*, 794 F. Supp. 3d at 531; *Laguna Espinoza*, 2025 WL 2878173, at *2; *Ba*, 2025 WL 2977712, at *2.

## II. Futility

Petitioner argues that he cannot obtain complete relief through the administrative process because the Immigration Court cannot address his constitutional claim. (ECF No. 1, PageID #5–6.) This argument overlooks the normal practice that courts seek to avoid decisions on constitutional grounds where possible. But proceeding first on statutory grounds remains the province of the agency. And Petitioner makes no argument that exhaustion of his appeals through the administrative process is futile. For good reason. Courts in this Circuit have determined that even where there is a "high probability of denial" of a petitioner's appeal of an Immigration Judge's bond decision, such a probability "does not weigh in favor of waiving exhaustion." *Hernandez Torrealba*, 2025 WL 2444114, at *11. Indeed, the acting Attorney General remains free to exercise his discretion to use agency proceedings to change or modify the policies about which Petitioner complains.

In *Hernandez Torrealba*, the petitioner sought relief from the exhaustion requirement based on a decision of the Board of Immigration Appeals affirming the denial of bond. But the court was "not certain how the BIA will rule on Petitioner's appeal given the particular circumstances of her case, and it would be presumptuous of this Court to simply assume that the BIA will rule against Petitioner." *Id.* So too here. Petitioner presents relevant background that might appear sympathetic. For this reason, his case might well prove to be one in which the agency changes or refines its policies through agency adjudication. That prerogative belongs in the first instance to the agency, which also has the knowledge and ability and to adopt policies

that are more tailored to the statutory scheme it is tasked with implementing in a way that courts are not.

"[M]any of the purposes for requiring exhaustion' may be served by permitting agency review in the first instance.'" *Hernandez Torrealba*, 2025 WL 2444114, at *11 (quoting *Beharry*, 329 F.3d at 62). Indeed, courts outside this Circuit acknowledge that the purposes of requiring exhaustion in the immigration context "include protecting the authority of administrative agencies, limiting interference in agency affairs, developing the factual record to make judicial review more efficient, and resolving issues to render judicial review unnecessary." *Beharry*, 329 F.3d at 62 (citing *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992); *McKart v. United States*, 395 U.S. 185, 193–95 (1969)). Moreover, the political sensitivities outlined in his petition underscore the potential international implications of his circumstances. The courts should be reluctant to wade into such affairs, which properly belong to the political branches.

For these reasons, the Court cannot say that exhaustion is futile or a waste of time or that prudential reasons apply for excusing it. To the contrary, it promotes judicial restraint, separates the powers and proper roles of the agency and the courts in the administrative regime Congress created, and reserves judicial review from decisions of the agency for the Sixth Circuit.

## CONCLUSION

For these reasons, the Court **DISMISSES** the petition for a writ of habeas corpus **WITHOUT PREJUDICE**.

**SO ORDERED.**

Dated: November 24, 2026

J. Philip Calabrese
United States District Judge
Northern District of Ohio